**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LUZ MARIBEL MYERS,
    Petitioner,
v.                                        Case No. 8:23-cv-414-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____

## ORDER

Luz Maribel Myers, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging her state-court conviction for manslaughter with a weapon. (Doc. 1.) Having considered the petition, (*id*.), and the response in opposition, (Doc. 8), the petition is denied.[2] Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

**I.**     **BACKGROUND**

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* 28 U.S.C. § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See id.* § 2244(d)(2). The appellate court affirmed Myers's conviction on October 19, 2016. (Doc. 8-2, Ex. 9.) Her judgment became final 90 days later, on January 17, 2017, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 184 days of untolled time, on July 21, 2017, Myers filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-2, Ex. 10.) That motion remained pending—and the limitation period was paused—until October 28, 2022, when the appellate mandate issued. (*Id.*, Ex. 22.) At that point, Myers had 181 days—or until April 27, 2023—to seek federal habeas relief. She met the deadline, filing her petition on February 17, 2023. (Doc. 1 at 18.) Therefore, the petition is timely.

[2] Myers did not file a reply.

1

In the early morning hours of February 5, 2013, Myers killed her boyfriend by stabbing him in the chest with a "butcher knife." (Doc. 8-2, Ex. 3, at 576.) Several hours before the stabbing, Myers met up with her mother and sister at the Hard Rock Casino in Tampa, Florida. (*Id.* at 343–44.) Myers and her sister got "a little . . . drunk" while their mother gambled. (*Id.* at 330–31.) Around 10:00 p.m., the three left the casino and drove to Myers's apartment. (*Id.* at 320–21.) Myers's boyfriend—Orlando Benitez—lived in the apartment, but he was working at the time. (*Id.* at 324, 357.) Myers and her sister continued to drink while waiting for Benitez to arrive. (*Id.* at 324.)

Benitez came home around midnight. (*Id.*) He seemed "happy." (*Id.* at 349.) Twenty minutes later, Myers's mother and sister left the apartment. (*Id.* at 325.) Around 1:30 a.m., Myers called her mother. (*Id.* at 327.) She said, "Orlando says he doesn't love me anymore." (*Id.*) In the background of the call, Benitez could be heard denying Myers's statement. (*Id.*) Myers hung up after telling her mother she loved her. (*Id.* at 328.)

Approximately thirty minutes later, at 2:03 a.m., Myers called 911. (*Id.* at 378.) Asked what was "going on," Myers said, "Domestic violence and I did it. . . . I stabbed him." (*Id.* at 380–81.) When officers arrived at the apartment, they found Myers "cradling" Benitez on the floor. (*Id.* at 393.) He was pronounced dead at 2:29 a.m. (*Id.* at 468.) The medical examiner later explained that Benitez died from a single "stab wound to the chest." (*Id.* at 868.) The knife traveled through his chest muscles, heart, and spine before coming to rest in his backbone. (*Id.* at 851–62.) The direction of the wound

was "downward," and it required "deliberate force"—comparable to the force needed to "stab[] into a melon." (*Id.* at 858, 863, 890.) Based on these facts, the medical examiner concluded that the wound was "not accidental." (*Id.* at 864.)

Soon after the stabbing, Myers agreed to speak with law enforcement. (*Id.* at 740–41.) She said, "We started arguing and I remember picking up the knife. . . . I don't know if I went at him with it or if he came at me, but I had it in my hand. And then after that it went through him." (*Id.* at 754.) Myers later claimed that she grabbed the knife because she "was trying to hurt herself," and Benitez "was trying to stop [her]." (*Id.* at 756.) She explained, however, that Benitez was not "yelling" or "being mean" to her. (*Id.* at 757.) Before the stabbing, Myers had been "Baker Acted" three times.[3] (*Id.* at 921–22.)

Myers was charged with manslaughter with a weapon.[4] (*Id.*, Ex. 2.) The case went to trial. Myers argued that the stabbing was an "accident" that occurred when "[s]he went for a knife to kill herself" and Benitez "tried to stop her." (*Id.*, Ex. 3, at 968.) The jury found Myers guilty as charged. (*Id.*, Ex.

---

[3] Florida's Baker Act "allows a person to be placed involuntarily in a treatment facility if clear and convincing evidence indicates that the person is mentally ill, and . . . there is a substantial likelihood that . . . the person will inflict serious bodily harm on himself or another person." *Turner v. Crosby*, 339 F.3d 1247, 1256 (11th Cir. 2003).

[4] To prove manslaughter, the prosecution must establish either that (1) the defendant "intentionally committed an act . . . that caused the death of the victim" or (2) the victim's death "was caused by the [defendant's] culpable negligence." Fla. Std. Jury Instr. (Crim.) 7.7.

3


4.) She received a sentence of 20 years' imprisonment. (*Id.*, Ex. 5.) Myers appealed, and her conviction was affirmed. (*Id.*, Ex. 9.) She then moved for postconviction relief under Rule 3.850. (*Id.*, Ex. 10.) Following an evidentiary hearing, the postconviction court denied relief, and the appellate court affirmed in an unexplained decision. (*Id.*, Exs. 11, 15–16, 21.) This federal habeas petition followed. (Doc. 1.)

## II.    STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a

5

state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." *Id.*

6

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Myers alleges ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in

7

*Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, she must show both deficient performance by her counsel and prejudice resulting from those errors. *Id*. at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id*. at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.  ANALYSIS

### A. Ground One—Failure to Raise Insanity Defense

Myers contends that trial counsel should have called a "licensed psychologist" to testify about her "state of mind prior, during, and after [the] criminal episode." (Doc. 1 at 6.) A psychologist allegedly could have established an "insanity defense" by explaining that Myers "did not know the nature or consequences of her act, and that [she] was unable to distinguish right from wrong." (Doc. 8-2, Ex. 10, at 3.) Under Florida law, a defendant pursuing an insanity defense bears the burden of proving, by "clear and convincing evidence," that because of a mental defect, she either "[d]id not know what [she] . . . was doing or its consequences," or, if she

9

knew what she was doing and its consequences, that she "did not know that what [she] . . . was doing was wrong." Fla. Stat. § 775.027.

At the evidentiary hearing, counsel described his efforts to investigate an insanity defense. Before trial, he retained two experts—Dr. Richard Carpenter and Dr. Michael Maher—to "determine whether" Myers "had a claim of . . . not guilty by reason of insanity." (Doc. 8-2, Ex. 15, at 26–27.) Both experts "opined" that Myers "did not meet the definition" of insanity. (*Id.* at 27.) Thus, counsel had no "good-faith basis" to pursue an insanity defense. (*Id.*) Moreover, he did not "believe this was an insanity case" because Myers "maintained that it was an accidental stabbing, [and that] she had no intent to stab" Benitez. (*Id.* at 28.)

The postconviction court held that Myers failed to "establish[] deficient performance or prejudice." (*Id.*, Ex. 16, at 3.) It explained that counsel "did investigate the viability of an insanity defense" by "consult[ing] with Drs. Carpenter and Maher"—neither of whom "found that [Myers] met the definition of not guilty by reason of insanity." (*Id.*) Because no evidence supported an insanity defense, "relief [was] not warranted on" Myers's assertion of ineffective assistance. (*Id.*)

This ruling was reasonable. A lawyer cannot be "ineffective for failing to raise a nonmeritorious issue." *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Here, counsel had no basis to pursue an insanity defense. The two experts who evaluated Myers found that she "did not meet the definition" of insanity. (Doc. 8-2, Ex. 15, at 27.) Nothing in the record rebuts that

10

conclusion. True, Myers's history of being "Baker Acted" suggests that she suffered from mental illness. But she presents no evidence that her mental illness made her unable to distinguish right from wrong, or to know what she was doing and its consequences. "[M]ental illness that does not result in insanity, as defined [by Florida law], is not a defense." *Perez v. State*, 306 So. 3d 126, 130 n.1 (Fla. 2d DCA 2018). Thus, "counsel was not deficient for failing to pursue an unsupported insanity defense." *Almeida v. Sec'y, Fla. Dep't of Corr.*, No. 24-11318, 2024 WL 5482646, at *1 (11th Cir. Nov. 1, 2024).

### B. Ground Two—Failure to Hire "Forensic Specialist"

Myers contends that trial counsel should have hired a "forensic specialist" to testify that "the incident was an accident due to [the] angle of [the] knife during the stabbing." (Doc. 1 at 8.) As noted above, the medical examiner opined that the fatal stab wound "was not accidental." (Doc. 8-2, Ex. 3, at 864.) She based that finding on "the location of the wound, the direction of the wound [i.e., downward], and the amount of force it would take to cause such a wound." (*Id.*) According to Myers, a "forensic specialist" could have "rebut[ted] the medical examiner's testimony by showing that the angle of the stab wound was in fact made by [Benitez] falling on the knife." (*Id.*, Ex. 10, at 3.)

The postconviction court rejected this claim because Myers failed to meet "her burden of proof in demonstrating prejudice." (*Id.*, Ex. 16, at 5.) It noted that Myers "did not present evidence at the evidentiary hearing in support of her allegation that if counsel had consulted with a forensic expert,

11

the expert would have been able to contradict the medical examiner's testimony." (*Id.*) Thus, Myers "ha[d] not demonstrated that but for counsel's failure to call a forensic expert, there [was] a reasonable probability the outcome of trial would have been different." (*Id.*)

The rejection of this claim was reasonable. Myers never identified any "forensic specialist" who could challenge the medical examiner's conclusions. Nor did she show that any forensic expert "had actually reviewed the evidence in [her] case." *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [Myers's] claims [was] mere speculation and [did] not entitle [her] to [] relief." *Id.* Thus, the postconviction court reasonably concluded that Myers's speculative allegations were insufficient to establish prejudice. *See, e.g., Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected ineffective-assistance claim based on failure to retain expert because "[i]t [was] speculative that an expert witness would in fact have testified" favorably to the defense); *Jimenez v. Sec'y, Dep't of Corr.*, No. 8:19-cv-684-MSS-AEP, 2021 WL 5416150, at *9 (M.D. Fla. Nov. 19, 2021) ("[I]n his post-conviction motion, [petitioner] neither identified an expert who could have testified [favorably to the defense] nor presented an affidavit or testimony to substantiate that testimony. Because [petitioner's] ineffective assistance of counsel claim was speculative, the state court did not unreasonably deny the claim.").

12

### C. Ground Three—Failure to Present Photographs of Bruises

Myers faults trial counsel for failing to introduce photographs of "bruising" on her arms and wrists. (Doc. 1 at 9; Doc. 8-2, Ex. 10, at 3.) The photographs were taken the day after the stabbing. (Doc. 8-2, Ex. 15, at 15.) According to Myers, they would have shown that Benitez "was trying to prevent [her] from committing suicide and was accidentally stabbed as a result." (Doc. 1 at 9.)

At the evidentiary hearing, counsel explained that he made "a strategic decision not to offer [the photographs] into evidence." (Doc. 8-2, Ex. 15, at 29.) Counsel was concerned that the prosecution would use the photographs to "say [that] if [Benitez was] grabbing [Myers's] biceps, he [was] trying to keep her off of him and keep the knife away." (*Id.* at 30.) That, in turn, would suggest the stabbing was "intentional." (*Id.*) Because the defense theory was that "this was an accident"—and because Myers "never said it was self-defense"—counsel "did not think [the photographs] benefited her case." (*Id.*)

The postconviction court held that Myers could not show "deficient performance." (*Id.*, Ex. 16, at 6.) It explained that counsel "considered the possibility of using the photographs at trial but rejected the idea because the state also could have used the photographs to argue [Benitez] was attempting to keep [Myers] away from him." (*Id.*) In the court's view, that decision was "reasonable" given "the state's potential ability to use the [photographs] in support of its own theory of the case." (*Id.* at 7.)

13

This ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. A strategic decision by counsel "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). "Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020). Therefore, to prevail on her ineffective-assistance claim, Myers "would have to show that no reasonable jurist could find that [her] counsel's performance fell within the wide range of reasonable professional conduct." *Id.*

Myers cannot make this showing. At trial, counsel argued that the stabbing was an "accident" that took place when Myers "went for a knife to kill herself." (Doc. 8-2, Ex. 3, at 968.) Counsel was aware of the photographs of Myers's bruises, but he made "a strategic decision not to offer [them] into evidence." (*Id.*, Ex. 15, at 29.) In his view, the photographs could hurt the defense by suggesting that the stabbing was "intentional." (*Id.* at 30.) Specifically, the prosecution could use them to argue that Benitez "grabb[ed] [Myers's] biceps" to "keep her off of him and keep the knife away." (*Id.*) Thus, counsel "considered the situation and decided that [presenting the photographs] would be more harmful than advantageous to the defense."

14

*Straight v. Wainwright*, 772 F.2d 674, 678 (11th Cir. 1985). A fairminded jurist could "readily conclude that such a strategic decision was not below the objective standard of reasonableness." *Id.*

### D. Ground Four—Failure to Address Discrepancy Regarding Benitez's Height and Weight

Myers argues that trial counsel should have "challenged" the medical examiner's testimony about Benitez's "height and weight." (Doc. 1 at 11.) At trial, the medical examiner said that Benitez was "5'11" and 160 pounds." (Doc. 8-2, Ex. 3, at 836.) According to Myers, Benitez actually stood 5'6" and weighed approximately 170 pounds. (*Id.*, Ex. 10, at 4.) Myers herself stood 5'3" tall. (*Id.*, Ex. 3, at 763.) She contends that Benitez's true "height and weight" were "key information" because the medical examiner relied on "the angle of the knife" to conclude that the stabbing was not accidental. (Doc. 1 at 11; Doc 8-2, Ex. 10, at 4.) In Myers's view, "correct information" about Benitez's stature would have supported the defense that the stabbing was an "accident." (Doc. 8-2, Ex. 10, at 4; Doc. 8-2, Ex. 20, at 6.)

At the evidentiary hearing, counsel testified that he had no "memory" of discussing Benitez's height and weight with Myers. (*Id.*, Ex. 15, at 39.) He explained, however, that he did not think the discrepancy "would have made a difference" at trial. (*Id.* at 40.) Counsel noted that the direction of the stab wound was "downward." (*Id.* at 39.) And if Myers "put[] her hand in the air, raise[d] it up, it [was] going to be taller or up to [Benitez's] height or

15

above his height." (*Id.*) Thus, regardless of whether Benitez was 5'6" or 5'11", Myers could have stabbed him "in a downward motion." (*Id.*)

The postconviction court rejected this claim, finding neither "deficient performance [nor] prejudice." (*Id.*, Ex. 16, at 8.) As the court noted, the medical examiner "testified at trial [that] the knife traveled in a downward stabbing motion," going "through portions of the ribcage and into the backbone." (*Id.*) Based on this testimony, the court found "reasonable" counsel's statement that "he did not think challenging [Benitez's] height as testified to by the medical examiner would have affected the outcome of trial." (*Id.* at 9.) The court explained that "regardless of [Benitez's] height, the knife traveled in a downward motion." (*Id.*) Moreover, Myers failed to "present[] any evidence in support of her allegation that [Benitez's] height played a role in the direction the knife traveled." (*Id.*)

The postconviction court reasonably found no prejudice.[5] "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the

---

[5] Because this claim fails for lack of prejudice, I need not decide whether counsel's performance was deficient. *See Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) ("If a defendant fails to satisfy either *Strickland* prong, we need not address both.").

16

[petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. "Applying AEDPA to *Strickland*'s prejudice standard, [I] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Myers]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Myers fails to meet her burden. She presents no evidence that the alleged height difference would have undermined the medical examiner's conclusion that the stab wound was "not accidental." (Doc. 8-2, Ex. 3, at 864.) That conclusion rested on "the location of the wound, the direction of the wound [i.e., downward], and the amount of force it would take to cause such a wound." (*Id.*) Nothing in the record suggests that the medical examiner—or any other expert—would have deemed the stabbing accidental if Benitez were five inches shorter than the medical examiner said he was. Myers's "speculation" to the contrary "is insufficient to carry [her] burden [as] a habeas corpus petitioner." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). In any event, even if Benitez were 5'6" rather than 5'11", Myers likely could have caused the same wound by raising her arm lower than she otherwise would have. (Doc. 8-2, Ex. 15, at 39.) Because "some fairminded jurists could agree" that Myers failed to show prejudice, "federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011).

### E. Ground Five—Failure to Introduce Police Report

Lastly, Myers contends that trial counsel was ineffective for failing to introduce a "police report of [an] incident that took place" in June 2012, several months before the stabbing. (Doc. 1 at 13; Doc. 8-2, Ex. 10, at 4.) According to Myers, the police report "would have shown that [Benitez] had intervened [during] a previous suicide attempt [when Myers] attempted to overdose and cut herself." (Doc. 8-2, Ex. 10, at 4.) In Myers's view, this would have supported her defense that Benitez "was accidentally stabbed as a result of intervening in [her] suicide attempt." (Doc. 1 at 13.)

The postconviction court held that Myers could not "establish deficient performance for counsel's failure to introduce the police report from the June 2012 incident." (Doc. 8-2, Ex. 11, at 7.) Citing Florida law, the court explained that the "police report constitute[d] inadmissible hearsay and would not have been admitted at trial absent an applicable hearsay exception." (*Id.*) Furthermore, Myers was "unable to identify any recognizable hearsay exception that would permit the introduction of the . . . police report as admissible evidence." (*Id.*) Thus, Myers was "not entitled to relief." (*Id.*)

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required here. The postconviction court held that counsel was not deficient because, as a matter of Florida law, the police report was inadmissible hearsay. (Doc. 8-2, Ex. 11, at 7.) Thus, the

18

postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Myers] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Morris v. Sec'y, Dep't of Corr.*, No. 8:07-cv-1830-JDW-AEP, 2010 WL 5330505, at *7 (M.D. Fla. Dec. 21, 2010) (federal court must "defer to the state court's conclusion" that "the proposed witness testimony would have been inadmissible as hearsay").

In short, the postconviction court "authoritatively decided as a matter of [Florida] law" that Myers's proposed evidence was inadmissible. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). A lawyer cannot be "ineffective for failing to offer inadmissible evidence." *Tompkins v. Moore*, 193 F.3d 1327, 1334 (11th Cir. 1999). Thus, the postconviction court reasonably concluded that counsel was not deficient for failing to introduce the police report. *See Ward v. Dep't of Corr.*, No. 20-13797-C, 2021 WL 4772143, at *4 (11th Cir. Apr. 20, 2021) ("The state court denied this claim based on its finding that [the proposed witness's] testimony would not have been admissible under Florida law, and the district court correctly found that it should not second-guess such a finding.").

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of

appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Myers must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues she seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Myers has not made the requisite showing. Finally, because Myers is not entitled to a COA, she is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Myers's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Myers and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on September 8, 2025.

Kathryn Kimball Mizelle
United States District Judge